May it please the Court, my name is John Weber. I'm here on behalf of the Appellate Globefill, Inc., and I'd like to reserve a few minutes for rebuttal. The district court applied an erroneous legal standard in determining functionality as a matter of law. The court said that it's overbroad to claim a recognizable shape as trade dress and that the elements necessary to create that shape make it functional as a matter of law. That's not the test set forth in Inwood v. Ives Laboratories. The Supreme Court said that the test to determine whether claim trade dress is functional is whether or not it's essential for the use or purpose of the article. In our case, the article is vodka and the claim trade dress is a bottle shaped like a human skull comprised of the elements necessary to create that shape. And there's nothing, there's nothing, there's no need to package vodka in a bottle shaped as a skull. There's an infinite number of shapes that could have been used to package vodka rather than use a package that the appellant had used. In fact, we couldn't find anything, we couldn't find any evidence that anyone had ever packaged vodka in a human skull-shaped bottle before the appellant, followed shortly thereafter by the appellees. The district court relied on a 1987 Ninth Circuit decision, Rachel v. Banana Republic. But in that case, the products were realistic, a series of realistic animal heads. And the elements necessary to create these animal heads were functional as a matter of law, were functional. Those heads were, only exist in nature in one organic form. So there's only one way to create those. There's no arbitrariness of design in creating those realistic animal heads. But couldn't the same thing be said that if once you decide to use a skull, there's only one way? I mean, a skull is a skull, and there's only one way that you can replicate a skull. And so, therefore, you're trying to protect the idea of using a skull as opposed to the actual skull. Well, if we were creating realistic skulls made of resin or something to sell to medical students to determine anatomy, there's only one way to create that shape. It exists in nature in one form. And then the answer would be yes. It would be, we wouldn't, you couldn't claim trade dress in the manifestation of a human skull if you're selling it as a skull. But the appellant is selling vodka and had an infinite number of shapes to package its vodka in. And it chose, as far as we can tell, it was the first in the history of man to choose to package it in a skull. It could have chosen to package it in an apple shape. It could have chosen to package it in any shape. And this decision would say, then, whatever shape you chose, the elements necessary to create that shape are functional, which means that there never would, you couldn't. Do you understand our case law to completely abandon aesthetic functionality? It's, the aesthetic functionality, well, first of all, aesthetic functionality in the context of this case, this is a 12b6 case, so that requires going outside the record, outside of the four corners of the complaint. But aesthetic functionality is really based on the Qualtechs v. Jacobson Supreme Court modification of, or addition to the test I just said. And that says that, in addition to whether or not it's essential for the use of purpose of the article, there's a, the Qualtechs trailer is whether there's significant evidence of a non-reputation-based competitive disadvantage. And if there's, and this Court had that in Kendall-Jackson v. Gallo Wines, where you found that the claimed trade dress there was a rounded flute around the top of the wine bottle and a label on the neck of the bottle. And there was evidence there that that created a California look, that other vineyards needed to, you know, to basically not just, not to show a single source, but rather a geographic source. And this Court found that that was, that that would have been aesthetic, basically the Qualtech style of aesthetic functionality. In Automotive Gold v. Volkswagen, this Court said that the aesthetic features that are claimed as a trade dress must be completely divorced from any source indication, from any indicia of origin ability. With a picture of the, of the skulls, or a photograph of the skulls attached to the complaint? Yes. The, yes. A description of a skull as a head, as a skull, as the elements necessary to create that skull. And then we attach the copy of the product on. And also one of the allegedly infringing product. Yes, Your Honor. Okay. The language that's in the complaint is, since the, last October, since we've noticed this appeal, the U.S. Patent and Trademark Office issued a trademark, a trade dress registration for this product packaging. And the language in the trade dress, in the trade dress registration is akin to, almost identical to what we claimed in the complaint. So the District Court said as a matter of law, you cannot prove a trade dress violation here? Yes, Your Honor. Under 12b6? Yes, Your Honor. And then having made that determination, the District Court said, well, you can never satisfy the, one of the essential factors for a preliminary injunction, which is likelihood of success on the merits. And therefore, didn't even address the other elements of a preliminary injunction. Is that correct? That's correct. If we agree, if we were to agree, or if we were to hold that this, that the District Court erred in its legal determination, what do we do with the preliminary injunction? We believe that this Court should take, should review the denial of the motion for preliminary injunction. It was fully briefed below. It was supported by evidence below. It was a subject of a. . . Well, go ahead. I'm sorry. Yeah. I mean, the problem is she denied it as moot in light of her other ruling. And, I mean, generally we would give the District Court the first shot at that because there's evidence that kind of, I think this is where Judge Pius was coming in. There's evidence, factual evidence that she'll need to consider and make findings. And we don't generally do that as an appellate court. She found the application for temporary restraining order as moot. She, with respect to the motion for preliminary injunction, she, at the oral argument, which both motions were before her on oral argument, and she asked the parties if they were, wanted to make argument about the motion for preliminary injunction and both parties said they would rest on the arguments in their briefs and the evidence in support of the briefs. Additionally, there was an emergency motion before this Court for injunctive relief pending disposition of this appeal. And this Court's motion panel denied that. But it was, again, fully briefed before this Court. Well, you know, when the District Court denies or grants injunctive relief, the District Court has to give a reason. And the only reason the District Court gave here, as I understand it, is that you can never prevail on the merits because you didn't allege a claim. That's correct. That's correct, Your Honor. But if there's an erroneous leak, we couldn't find any cases, actually. I mean, I don't see how – my only concern is I don't see – if we were to agree with you that there is a claim here, that you've alleged the essential elements of a trade dress claim, there is conflicting evidence in the record about whether or not the circumstances would warrant a grant of a preliminary injunction. And as Judge Wardlaw said, we don't go around making factual determinations. Well, this – this – Yeah, the problem is the likelihood of confusion. If we reverse her on the law, then she would have a framework with which to address whether or not there exists a likelihood of confusion. I think she would have to address that question. We – since the – we filed this notice of appeal within days of the – of the appellees putting a product on the market. We've been out there 18 months now selling these infringing – I understand your concern. I do. And I do know that there is evidence in the record of actual confusion, and ordinarily that's sufficient to establish a likelihood of confusion. Yes, Your Honor. Is there other evidence in the record that no one is confused? I mean, is there a – I mean, did they submit evidence showing that there isn't any likelihood of confusion because theirs is colored and yours is clear or something? Well, we – well, the – that's another – the district court did – did signal a misunderstanding of the – of the AMF versus Sleekcraft factors. In particular, this Court has said many times that you cannot compare the differences between – you cannot look at the trade dress or trademarks and dissect them and compare the differences, but rather they need to be looked at in their totality as they would appear in the marketplace because consumers have imperfect memories of trademarks and trade dress that they come across in the market. Counsel, did it make a difference that the confusion that was articulated in the district court was for retailers and distributors as opposed to end users or consumers of the actual product? In some ways, it's because it hadn't been on the market yet. So it was only exposed to those retailers and distributors and wholesalers. And this – this circuit has not said, but the Fifth Circuit said in Fujifilm that confusion by people who do this for a living is even more significant than that by a consumer who is part of the brands. I was just curious because our – our precedent talks in terms of consumers. Consumers. So we believe that – that the – that this Court just affirmed the district court that the precedent that would be set would – would – would be that merchants would not be able to claim a recognizable shape or maybe even any shape because the elements necessary to claim the shape would be functional as a matter of law. And, again, we believe that this – that the – that the motions have – that the motion for preliminary injunction has been fully briefed below. The evidence isn't – there's not much evidence in dispute in this part of this motion. What is the legal significance of the fact that the trademark office has now issued a trade dress registration? Well, when we go – if we go back to the district court, we would – it's two things. We would have a separate cause of action. This cause of action was brought under Section 43A of the Lanham Act, which requires an affirmative pleading and proof of – of non-functionality, distinctiveness and likelihood of confusion. A trademark registration, which is going to provide another separate cause of action, as well as shifting the burden to the defendant to plead functionality and non-distinctiveness. But this – it doesn't affect this cause of action directly, does it? It doesn't affect this cause of action. We – we could – we were – we were thinking about just bringing – just dismissing the – this appeal, bringing a new cause of action, but it would have been before the same court, and we think the court is confused about functionality. We could also – we were also thinking about filing a motion under 60B-2 to ask for reconsideration and having this court remand to the district court. But again, we were concerned about this court's confusion about functionality as well as AMF versus sleep craft factors. Okay. All right. Thank you, counsel. Mike Hensley on behalf of appellee Kim Brandy. I have at counsel table Robert Rivas, who was involved both at the trial and the appellate level. And Element Spirits has recently subbed in Kendra J. Hall on behalf of – as an appellee, so I will recede her a few minutes, three to five minutes, if she wants. That substitution was filed fairly recently. All right. Is there only one – Element Spirits is the only – No, there's two appellees, which is Kim Brandy, who is one of the shareholders and is named as a defendant, and Element Spirits. I see. Okay. Okay. Issue number one is over breadth. And there is an easy way to resolve the appeal because of waiver. The over breadth issue was never directly raised in this issue in the AOB. This case was knocked out on a 12b-6. It's a matter of law, she said. The elements necessary to prove a trade – to allege a trade dress claim don't make it with the allegations in the complaint. But one of those aspects was the over breadth issue, which is that they had not adequately described their trade dress. And that's what I call the moving target issue here. I thought in the amended complaint they fairly well described what the elements were. Let's look at that. The second amended complaint, and that's at ER-519, the excerpts of records, they describe it this way. Bottle in a shape of a human skull, including the skull itself, eye sockets, cheek bones, a jaw bone, a nose socket, and teeth, and including a poor spout, which is a topper. That is the definition of what they were saying. In their opposition, they further clarify the trade dress we're going to protect is the concept of the bottle. Okay? And the judge expressly ruled that's over broad. That's generic, that you're protecting the elements of the actual skull. And that is what, as in the Daystar case, basically saying you can't tell me and the only thing you've done is the skull bottle. And that's too broad. That's too generic. And you get the Daystar case basically saying you can't use trade dress to obtain a monopoly that a patent or a copyright could give you under 43. Counsel, how does this case differ from Fiji Water? Well, I think it's different because Fiji Water was a situation in which there was distinctive packaging outside of the actual product. Here, product is the skull. And there's nothing different. No, the product is the vodka. Yes. I don't think that's what they're saying. The product is the vodka, not the skull, not the bottle. I think that's correct. But the trade dress that they're going from, and it's different, is the skull. And you might remember on this one. No, that's correct. The way in which the bottle of vodka is packaged, the trade dress, the design. And that's the design of the product. The packaging of the product is classic trade dress materials. But the design is simply unique, functional. Well, you're getting into the whole area of what I was asking counsel earlier. You're getting to aesthetic functionality. Right. And I read under. And we've pretty much abandoned that whole line of cases. That's correct. Job's daughter. Right. And we've gone beyond that. We've gone beyond that and said there isn't such a thing. There isn't what? There isn't such a thing as aesthetic functionality. And that's really their underlying theory here. That's really what you're going with. I don't understand. I don't think that they're arguing. I don't understand. You see. They're not arguing about the packaging. We're dealing. See, the problem here is that the district court, what I see, is that the district court granted a 12B6. Right. There's no way they can ever prove a trade dress violation. Right. Based on these allegations and the way in which the Second Amendment complaint was pled. Right. And they had a couple of opportunities to define their trade dress. And you read those complaints very generously. Yes. And it sure, you know, I don't speak for anybody else, but it sure looks like they've got the elements of a trade dress claim here. But I don't. Whether they can ever prove that, whether they can ever show, meet the other elements is a whole other matter. No, but if you go to Rachel. It's a factual matter. If you go to all Rachel, which is the leading Ninth Circuit case, it was an animal. Rachel really doesn't. Rachel is, you're misreading Rachel to support your argument in this case because the product in Rachel was the animal. Well, but in this case, you've got a competing stall head with tequila. Right. And that's an extension. That's another aspect of trademark and trade dress laws. It's an extension of the product line. I could see, I could definitely see how people could be confused and believe that there was the same source involved in a skull-shaped bottle that contained alcohol. And first they did vodka and now they're doing tequila. You couldn't. You've got vodka and tequila, completely two different products. But you've got to focus on what, what was the compass in front of the district court? You have to go with how they defined their trade dress. They did that very specifically and I read it to you. Then in their opposition, they're asked, what are you defending? We're defending the concept of the bottle, which segues in with what Mr. Ackroyd said is, hey, I just sketched the idea of this on a napkin and this is how it evolved. Then if you go to AOB 36, look at what they say they're defending. They say they're defending the shape and design of the bottle. I don't suggest that they're defending vodka or liquor. That's not what was in front. The way you read the complaint, the way I read the complaint is they are trying to protect the product design of the packaging in which the product is contained. And what is that design? It's functional skull features. Even the law is a matter of law. Let me ask you, what's functional about the eye sockets? What's functional about the nose in this particular context? With the skull, you don't have to have an eye socket. That's what a skull is going to be. It's made of those components. But does it have to be in a – can it only be in a particular manner? All this was was a clear, clear, clear skull with stuff generically functional that you would have in a skull. Nothing more. The only thing functional here that struck me was the spout. Well, the spout's there, but you can't have a skull without what was there. Well, you can certainly have a skull without a spout. You could. I mean, that's – I mean, the spout is clearly functional, so I don't know why they were claiming that. But the rest of it's functional. I mean, the very thing that they defined – Functional in what sense? Functional in that you can't – whatever you put in it, whatever liquid, vodka, water, whatever, you cannot have – you have to have those features. The eye sockets, the, you know, cheekbones, the whole thing that they define as being the trade dress. What utilitarian value does a bottle of this kind have? The only thing is it's aesthetic functionality. That's the only value it has, which is basically abandoned here. But to extend it to trade dress, you're extending it in an area you didn't want to have. I don't see any – Selling this – selling vodka in a bottle like this, does it make it more efficient to package the vodka? I don't see that. Does it make the vodka taste better? I don't see that. But that could be in another bottle. If you have a clear bottle that has none of these features, it has nothing else. It's not going to change the quality of the product. Let me ask you this. What do we do if we happen to disagree with your argument? If we do, I'm not saying, you know – But I think you've hit on it, which is if you – one of the things I want to correct, the district judge was very careful to say, look, I believe it's overbroad and it's functional. If I do that, I'm going to deny the preliminary injunction. She didn't rule on the merits and go into let me make my own comparison, let me see if there's actual consumer thing. And there was conflicting evidence of that. We did put in evidence from distributors and retailers. We pointed out that the advertising is different, right? They're really celebrating the day – we are celebrating Day of the Dead, and they're really saying, oh, this is a life type of celebration. So there were differences that were in front of her. But I think the judge got it right based on the compass that was in front of her, because you can only define the trade dress in terms of what's put in front of you. And, in fact, Rachel and all these other cases, true, they didn't come at the pleading stage, but the judge basically did the same function. Judge Walker did it in Walker and Zanger. They basically looked at the two things and said, hey, one, have you defined this enough to where this is a trade dress that we know is beyond functionality or something that we believe that you can parlay a monopoly to? And the answer in those cases was no. Some of them, they go functionality. And, again, they compare the two products, and they don't even get to secondary meaning, actual confusion, because they come to the conclusion, as a matter of law, take those features, the eye sockets, the jawbone, everything, and forget the spout. But they look at those type of features and say, that's generic to the species, and that is functional as a matter of law. Rachel, the same judge in Beebe's creation, did it on the look of the lace. And they themselves say it's the look, it's the shape, it's the idea of the bottom. Kagan. So what does it all have to do with this? So does this tie this to the preliminary injunction? I don't think it does tie to the preliminary injunction, because as a matter of law, I also found it was overbroad and unfunctional. Okay. All right. Well. I don't think that there is a tie. It doesn't help. Basically, she denied it as moot. That would be my position. Yeah. What about the motion that our prior panel, motions panel had before it? Did it deny a – what was the motion? An emergency motion. I'm sure it was. Was it for an injunction pending disposition on appeal? That's correct. Okay. And did our prior panel deny it with or without prejudice? There's no indication one way or the other. I believe that what they said is there's no irreparable injury. You have your adequate remedy in terms of your appeal. Yeah. They probably said that because thinking of the financial and economic harm. But, I mean, I think from the tenure of the comments, this is – you're not well situated to look at the evidence and be  I think that's the remedy that would happen here. If we disagree with you, it should probably go – it should probably go back to the district court. I think that's the remedy that would happen here. But I would have you look at the Walker-Zang or Rachel, Beebe's creation, Aurora World. That's another case that's very similar. Would you be surprised if I told you we already, you know, looked at those cases? I'm sure you have. I mean, would it – would it – would it – would you – They're similar. Okay. I just don't see – their argument here really is not the packaging. They're really a stop by the argument. The problem here that I'm having with your argument is that I just don't see this as the kind of case that on the merits should be dismissed at the 12b6 stage. Well, I would usually agree with you, except for the records you have in front of you. 12b6, we look at the allegations in the complaint, plus any documents that are referred to in the complaint, such as the attachments. That's what I want to focus you on. If you look at the attachments and you look at how they describe the trade dress they want, the compass that the judge looked on, you will come to the conclusion that it's functional as a matter of law. Okay. You can't have a unique arrangement of these functional attributes to this skull. Okay. Counsel, I'm sorry to interrupt you, but were you going to give three minutes? I'll cede a couple of minutes to Ms. Hall if she wants to argue. Thank you very much, Kendra Hall, for powering my spirits. I think that this definitely was an aggressive ruling by the district court, and there's no question of that. But the authorities tell the court, exercise caution under the Lanham Act. The Lanham Act is not intended to provide a monopoly over a concept. And the real problem here is there were not specific specifications given as to the skull. But has there ever been a skull-shaped bottle that held alcohol before this one? The representation is no. I know that there's evidence in the record of skull-shaped patents that were filed. But the complaint says- How is it different than, like, the Gallo case where the bottle packaging had a trade dress that evoked the California lifestyle, and this one seems to evoke this Day of the Dead alcohol kind of- I think there's a couple of differences. And I actually think it's interesting. At page 5 of their opening brief, they show the box that their skull comes in. So I don't know if I fully agree. You know, I heard that the bottle is packaging, but there's additional packaging besides this bottle. I do think that this bottle, you know, as a consumer, I could conceive throwing a candle in there, flowers in there, maybe a fish on my desk. You know, I think that this bottle is more than, like, a label. And Kendall Jackson, when we're talking about the leaf and whether Turning Leaf is trying to trade on that reputation and origin that Kendall Jackson had in that case. So I think that there are some differences, and this is a pretty unique context. And the problem is the pleading was so broad in this case, and they were given three shots to reel it in so that you're not telling competitors and opening the door to claims that every single skull bottle is precluded and in violation. I mean, there was no effort to describe eyes, nose, angles, materials used, what was in it. And so I think the Lanhamac is not intended to be used, and that's what the judge here was exercising that gatekeeper rule and saying, you know, this is just too broad and you didn't limit it. And then for the reasons I've also indicated, I think that it's not, you know, there is some utilitarian function, like I've just indicated. It's beyond the aesthetics of the bottle. It certainly could be used for other things. It's not a logo or a label that's just going to be thrown away. So it is a unique product in this case. And I would just, in closing, indicate that certainly there are a number of elements and factual issues that were raised in the preliminary injunction, and the trial court or the district court's discretion, I believe, would need to be exercised on those. So in close, we would request that the court affirm the district court's rulings, deny the preliminary injunction, and also deny the request for judicial notices. I think it was improper and the issue is irrelevant to what's before this court. Thank you very much. All right. Thank you, counsel. Do you have a few minutes? Just a few. Okay. Not even a minute. I just wanted to comment on the emergency motion. It was dismissed without prejudice. It was denied. We intend to dismiss without prejudice the motions, the merits panel, taking a look at it. But I haven't seen those papers. So let's have a look at it. It was actually just denied. It didn't say whether it was. Right. We're just reviewing the district court's denial of the preliminary injunction. We're not concerned about whether or not we should grant the motion. It was a case, though, that you, sui sponte, reconsidered a denial of your motions panel. That would be very unusual. I agree, Your Honor. And the other thing is, we didn't claim in our complaint the concept of a bottle. In fact, the word concept was taken out of context in our motion in opposition to the motion to dismiss. We said this singular conceptual bottle shape. All right. Thank you, counsel. Globeville Incorporated v. Elements Ferrets will be submitted. We have previously submitted NIST 26 groups v. Rader, Fishman, and Grower on the briefs. And we'll take up United States v. Weiss-Lesky.
judges: Wardlaw, Paez, Rawlinson